# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
### JOHNSTOWN DIVISION

UNITED STATES OF AMERICA *ex rel.*

[UNDER SEAL]

    *Plaintiff,*

v.

[UNDER SEAL]

    *Defendants.*

Case No. 3:21-cv-160

**Complaint for Violations of the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.***

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**DO NOT PUT ON PACER**

**Jury Trial Demanded**

FILED

SEP 13 2021

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

CONFIDENTIAL AND UNDER SEAL—*QUI TAM* COMPLAINT

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* MIKE KANE<br><br>103 Gregory Rd<br>Johnstown, PA 15905<br><br>*Plaintiff,*<br><br>v.<br><br>BEEGHLY TREE, LLC<br><br>458 Hillvale Road<br>Somerset, PA 15501<br><br>HILLVALE ENTERPRISES, LLC<br><br>1184 Piedmont Road<br>Somerset, PA 15501<br><br>PROGRO ENVIRONMENTAL LLC<br><br>519 Lyons Road<br>Rockwood, PA 15557<br><br>HILLVALE FARMS<br><br>219 Hillvale Road<br>Somerset, PA 15501<br><br>RYAN BEEGHLY<br><br>844 Prospect Avenue<br>Somerset, PA 15501<br><br>MATT BEEGHLY<br><br>1184 Piedmont Road<br>Somerset, PA 15501 | Case No. 3:21-cv-160<br><br>**Complaint for Violations of the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*,**<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**DO NOT PUT ON PACER**<br><br>**Jury Trial Demanded** |

CONFIDENTIAL AND UNDER SEAL—*QUI TAM* COMPLAINT
*United States ex rel. Kane v. Beeghly Tree, et al.*

HEATH YOUNKIN

519 Lyons Road
Rockwood, PA 15557

*Defendants.*

## INTRODUCTION

1.      *Qui tam* Relator Mike Kane, by his attorneys, individually and on behalf of the

United States of America, files this Complaint against Beeghly Tree, LLC ("BT"), Hillvale

Enterprises, LLC ("HVE"), ProGro Environmental, LLC ("PGE") (collectively "Corporate

Recipient Defendants"), Hillvale Farms ("HVF") (all the preceding collectively the "Corporate

Defendants"), Ryan Beeghly ("Ryan"), Matthew Beeghly ("Matt"), and Heath Younkin

("Younkin") (the "Individually Named Defendants") (all, collectively, "Defendants") to recover

damages, penalties, and attorneys' fees for violations of the Federal False Claims Act, 31 U.S.C.

§§ 3729-32 ("FCA" or "False Claims Act").

2.      Defendants violated the FCA by making or causing to be made false

certifications that Corporate Recipient Defendants were eligible to receive Paycheck Protection

Program ("PPP") loans and by making or causing to be made false records to decrease Corporate

Recipient Defendants' obligation to repay those loans. These certifications were a material fact

relied upon by the Small Business Administration ("SBA") in approving the loan applications

and loan forgiveness applications.

3.      Defendants are liable for: (1) the amount of received first draw PPP funds to the

extent that they have certified authorized use when applying for forgiveness; (2) the full amount

of second draw PPP funds for which the affiliated entities were ineligible; and (3) the full amount

of loan processing fees paid by the SBA to Lenders for loans disbursed and/or forgiven due to the fraudulent conduct alleged herein.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5.      This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Corporate Defendants are headquartered in and all Defendants conduct business within this judicial district.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(c), 1395(a), and 31 U.S.C. § 3732(a) because the complained of illegal acts occurred within this judicial district.

7.      Relator Kane is the "original source" of this information within the meaning of 31 U.S.C. § 3730(e)(4)(B) and states that his knowledge of the information contained herein has not been publicly disclosed.

## PARTIES

**RELATOR KANE**

8.      Relator Kane is a citizen of the Commonwealth of Pennsylvania and resides in the city of Johnstown in Cambria County.

9.      Kane is a certified public accountant, with active license number CA058166 issued by the State Board of Accountancy as verified by the Pennsylvania Licensing System, www.pals.pa.gov.

10.    Kane holds a Bachelor of Science degree in Accounting from Indiana University of Pennsylvania and has over 12 years' experience in the accountancy field.

11.    Kane was hired by BT as Controller in or around February 2018.

12.    In or around June 2019, Ryan changed Kane's employer from BT to HVE, but Kane's official responsibilities did not change. At Ryan's request, however, Kane performed some duties outside of accounting such as applying for contractor licenses.

13.    In or around July 2020, Kane was laid off. The purported reason for his termination was economic stress, specifically from the COVID-19 pandemic.

**BEEGHLY TREE**

14.    Beeghly Tree, LLC ("BT") is a landscaping, land clearing, and construction company that operates primarily in Somerset County, Pennsylvania.

15.    BT was created as a limited liability company in Pennsylvania in or around 2005. Its prior name was Beeghly Tree Service, LLC and it has operated under the fictitious name Beeghly Tree since in or around 2017.

16.    BT's listed officers are Ryan Beeghly, Matthew Beeghly, and Heath Younkin.

17.    BT is registered at 458 Hillvale Road in Somerset, Pennsylvania.

**HILLVALE ENTERPRISES**

18.    Hillvale Enterprises ("HVE") is a company furnishing office administration services in Somerset County, Pennsylvania.

19.    HVE was created as a limited liability company in Pennsylvania in or around December 2017 and lists its address as 1184 Piedmont Road in Somerset, Pennsylvania.

20.    HVE conducts business in the same office as BT and PGE, located at 458 Hillvale Road in Somerset, Pennsylvania.

21.    HVE does not have a separate contact number available to the public.  Relator Kane notes that this is because HVE's only clients are BT and PGE.

## PROGRO ENVIRONMENTAL

22.    ProGro Environmental, LLC ("PGE") is a landscaping and pipeline construction company doing business as Pro Pipeline Solutions in Pennsylvania until December 2019.

23.    PGE was created as a domestic Limited Liability Company in Pennsylvania on or around December 28, 2017, and as a foreign entity in West Virginia on or around June 6, 2018.

24.    In or around December 2019, PGE stopped the pipeline division and downsized the company's scope. Budgets produced by Kane and Younkin projected a reduction of approximately $18 million to $2 million.

25.    PGE's listed officers are Ryan Beeghly, Heath Younkin, and Hillvale Enterprises, LLC.

26.    PGE's designated address is 519 Lyons Road in Rockwood, Pennsylvania.

27.    PGE lists its principal office address and mailing address as 458 Hillvale Road in Somerset, Pennsylvania, where it conducts business in the same office as HVE and BT.

## HILLVALE FARMS

28.    Hillvale Farms ("HVF") is a fictitious name entity created in Pennsylvania on or around June 26, 2018.

29.    HVF is registered at 219 Hillvale Road in Somerset, Pennsylvania and its listed officers are owners Blake L. Beeghly and Ryan B. Beeghly.

30.    To the extent that HVF conducts business, it does so at 458 Hillvale Road in Somerset, Pennsylvania in the same office as the other Corporate Defendants.

31.    HVF owns the land at 458 Hillvale Road that the offices of BT, PGE, and HVE are located on.

## RYAN BEEGHLY

32.    Ryan B. Beeghly ("Ryan") is a resident of the Commonwealth of Pennsylvania.

33.    Ryan resides at 844 Prospect Avenue in the township of Somerset, PA 15501.

34.    Ryan owns at least 70 percent of BT and has ownership of PGE, HVE, and HVF.

35.    Ryan's brother is Matthew Beeghly. Ryan's father is Blake L. Beeghly.

## MATTHEW BEEGHLY

36.    Matthew Beeghly ("Matt") is a resident of the Commonwealth of Pennsylvania.

37.    Matt resides at 1184 Piedmont Road in the township of Somerset, PA 15501.

38.    Matt's brother is Ryan B. Beeghly. Matt's father is Blake L. Beeghly.

39.    Matt owns approximately 30 percent of BT and is listed as an officer.

## HEATH YOUNKIN

40.    Heath Younkin ("Younkin") is a resident of the Commonwealth of Pennsylvania.

41.    Younkin resides at 519 Lyons Road in the borough of Rockwood, PA 15557.

42.    Younkin is listed as an officer for BT and PGE.

**LEGAL BACKGROUND**

**I.    The False Claims Act ("FCA")**

43.    The False Claims Act imposes liability on any person who knowingly presents or causes to be presented a false or fraudulent claim for payment or approval.  31 U.S.C. § 3729(a)(1)(A).

44.    The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B).

45.    The term "knowingly" as used in the FCA means that a person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information.  31 U.S.C. § 3729(b).  No proof of specific intent to defraud is required to show that a person acted knowingly under the FCA.  *Id.*

46.    Any person who violates the FCA is liable for civil penalties between $11,665.00 and $23,331.00 per false claim prior to November 2, 2015, as adjusted for inflation, plus three times the amount of damages that the Government sustains as a result of the defendant's actions. 31 U.S.C. § 3729(a), 28 C.F.R. § 85.5.

**II.    The Paycheck Protection Program ("PPP") First Draw Loans**

47.    The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") is a law intended to address the economic fallout of the COVID-19 pandemic in the United States.

48.    The CARES Act resulted in, *inter alia*, the Paycheck Protection Program. Coronavirus Aid, Relief, and Economic Security Act, No. 116-136 (March 27, 2020).

49.    The PPP is a loan program designed to provide eligible businesses low-interest rate loans guaranteed by the Small Business Administration (SBA) with support from the Department of the Treasury.

50.    This program provides small businesses with funds to pay up to 24 weeks of payroll costs including benefits.

51.    The PPP is similar to existing SBA Loan Programs. However, the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere, as defined in the Small Business Act. 15 U.S.C. § 632(h).

52.    The PPP section of the CARES Act expanded eligibility for SBA loans beyond the limitations of the Small Business Act. 15 U.S.C. §§ 632, 636.

53.    The following entities affected by Coronavirus (COVID-19) may be eligible for PPP money:

    i.    Any small business concern that meets SBA's size standards (either the industry-based size standard or the alternative size standard);

    ii.    Any business, 501(c)(3) non-profit organization, 501(c)(19) veterans' organization, or Tribal business concern (sec. 31(b)(2)(C) of the Small Business Act) with the greater of:

        a.    500 employees, or

        b.    That meets the SBA industry size standard if more than 500;

     iii.     Any business with a [North American Industry Classification System ("NAICS")] Code that begins with 72 (Accommodations and Food Services) that has more than one physical location and employs less than 500 per location;

     iv.     Sole proprietors, independent contractors, and self-employed persons.

54.     An entity can also be eligible for a PPP loan as a small business concern if, as of March 27, 2020:

     a.     The maximum tangible net worth of the business is not more than $15 million; and

     b.     The average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

Small Bus. Admin, "Paycheck Protection Program Loans Frequently Asked Questions (FAQs)" (June 25, 2020).

55.     The SBA industry-based size standards are determined by NAICS code. The standards "are expressed either in number of employees or annual receipts in millions of dollars... [and indicate] the maximum allowed for **a concern and its affiliates** to be considered small." 13 C.F.R. § 121.201 (emphasis added).

     a.     The maximum identified for NAICS code 561730, Landscaping Services, is $8 million in annual receipts.

     b.     The maximum identified for NAICS code 237120, Oil and Gas Pipeline and Related Structures Construction, is $39.5 million in annual receipts.

     c.     The maximum identified for NAICS code 561110, Office Administrative Services, is $8 million in annual receipts.

56.     Entities that are applicants for a PPP loan submit their Borrower Application Form to a federally insured depository institution, federally insured credit union, or a Farm Credit System ("Lender") which processes the loan application and funds the loan.

57.     The SBA guarantees 100% of the outstanding balance, and that guarantee is backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

58.     For its work to process the application and fund the loan, the SBA pays the Lender a processing fee based on the size of the loan funded by the Lender. SBA will pay lenders fees for processing First Draw PPP loans in the following amounts: Five (5) percent for loans of not more than $350,000; Three (3) percent for loans of more than $350,000 and less than $2,000,000; and One (1) percent for loans of at least $2,000,000. 15 U.S.C. § 636(a)(36)(P).

## III.    Affiliation Rules for Size Determinations

59.     Agency guidance specifies that "applicants in SBA's Business Loan Programs (which include the PPP) are subject to the affiliation rule contained in 13 CFR § 121.301." SBA Interim Final Rule "Business Loan Program Temporary Changes; Paycheck Protection Program." 85 Fed. Reg. 20,819 (April 15, 2020).

60.     Entities that have the power to control another are affiliates of one another. Entities that are controlled by the same third party are also affiliates of each other as well as of the third party. 13 C.F.R. § 121.301(f).

61.     Entities are affiliates of one another if there exists an identity of interest between close relatives with identical or substantially identical business interests. 13 C.F.R. § 121.301(f)(4). A close relative is defined as "a spouse; a parent; or a child or **sibling**, or the spouse of any such person." 13 C.F.R. § 120.10 (emphasis added).

CONFIDENTIAL AND UNDER SEAL—*QUI TAM* COMPLAINT
*United States ex rel. Kane v. Beeghly Tree, et al.*
10

62.     Administrative services are subject to exception to affiliation in cases where the services are common and unrelated to contract performance or management and adequate payment is provided for those services. However, affiliation may be found on other bases even when these particular exceptions apply. 13 C.F.R. § 121.103(b)(2)(ii).

63.     The CARES Act waived the § 121.103 affiliation provisions for a limited category of business concerns: businesses in the Accommodation and Food Services sector as determined by their North American Industry Classification System (NAICS) code; businesses operating as a franchise that are assigned an SBA franchise identifier code; and businesses receiving financial assistance from a licensed Small Business Investment Company (SBIC). 15 U.S.C. §636(a)(36)(D)(iv). None of these exceptions are applicable to Corporate Defendants.

64.     The Economic Aid Act preserved these affiliation waivers for the purposes of PPP Second Draw Loans while still applying the revised size standard. 15 U.S.C.A. §636(37)(E).

## IV.     PPP Loan Forgiveness and Second Draw Loans

65.     To be eligible for loan forgiveness, borrowers must complete SBA Form 3508 or SBA Form 3508EZ to calculate eligible payroll and nonpayroll costs.

66.     Borrowers seeking forgiveness of their PPP loans must certify that the dollar amount for which forgiveness is requested:

    a.  Was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);

    b.  Includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;

    c.   Does not include nonpayroll costs in excess of 40% of the amount requested; and

    d.   Does not exceed eight weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual or, if a 24-week covered period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual.

67.    Nonpayroll costs that may be paid with PPP loan proceeds are:

    a.   Costs related to the continuation of group health care benefits during periods of paid sick, medical, or family leave, and insurance premiums;

    b.   Employee salaries, commissions, or similar compensations;

    c.   Payments of interest on any mortgage obligation (which shall not include any prepayment of or payment of principal on a mortgage obligation);

    d.   Rent (including rent under a lease agreement);

    e.   Utilities;

    f.   Interest on any other debt obligations that were incurred before the covered period;

    g.   Covered operations expenditures, as defined in [15 U.S.C.A. § 636m(a)];

    h.   Covered property damage costs, as defined in [15 U.S.C.A. § 636m(a)];

    i.   Covered supplier costs, as defined in [15 U.S.C.A. § 636m(a)]; and

    j.   Covered worker protection expenditures, as defined in [15 U.S.C.A. § 636m(a)].

15 U.S.C.A. § 636(a)(36)(F).

68.    In order for rent payments to be eligible costs for loan forgiveness, any lease or mortgage agreement must have been entered into prior to February 15, 2020, and any loan forgiveness amount to a related party must be no more than the mortgage interest for the space during the covered period. SBA Interim Final Rule, *Business Loan Program Temporary Changes; Paycheck Protection Program-Treatment of Owners and Forgiveness of Certain Nonpayroll Costs*, 85 Fed. Reg. 52, 881 at 52,882 (Aug. 27, 2020) (to be codified at 13 C.F.R. pt. 120).

69.    Additionally, borrowers must certify that:

a.    They have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, and business utility payments; and

b.    The information provided in the application and the information provided in all supporting documents and forms is true and correct in all material respects.

70.    In December 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act modified and extended the PPP.  Consolidated Appropriations Act, 2021, Pub. L 116-260, tit. III, sec. 311 (to be codified as amended at 15 U.S.C. § 636(a)(37)).

71.    To be eligible to receive a second draw loan, an entity must employ not more than 300 employees or not more than 300 employees per location for a discrete group of industries. 15 U.S.C. § 636(a)(37)(A)(iv).

72.    In addition, a borrower must have "experienced a revenue reduction in 2020 relative to 2019" of at least 25% in order to be eligible. Paycheck Protection Program Second

Draw Loans, 86 Fed. Reg. 3,712, 3,713 (Jan. 14, 2021) (to be codified at 13 C.F.R. pts. 120, 121).

73.    The Second Draw of the PPP does not allow for any additional size standards by which an entity can be eligible to receive a loan and requires that the eligibility standard must be met by the applicant together with its affiliates.

74.    To receive a Second Draw Loan, an applicant must submit SBA Form 2483-SD, Second Draw Borrower Application Form.

75.    Applicants must indicate if the Applicant or any of the Applicant's owners have common management with or own another business.

76.    The authorized representative of the Applicant must certify that the applicant is eligible to receive a Second Draw Loan and that together with its affiliates, the Applicant employs no more than 300 employees.

77.    The authorized representative of the Applicant must also certify in good faith that before the Second Draw Loan is disbursed that Applicant will have used the full loan amount of the first draw loan only for eligible expenses.

78.    The SBA adjusted the fees to be paid to lenders for the processing Second Draw PPP Loans to the following amounts:

(i)    for a Second Draw PPP Loan of up to (and including) $50,000, in an amount equal to the lesser of:

(A)    50 percent of the balance of the financing outstanding at the time of disbursement of the loan; or

(B)    $2,500; and

(ii)    for a Second Draw PPP Loan of more than $50,000, in an amount that is:

(A)    5 percent of the balance of the financing outstanding at the time of

disbursement of the loan for a loan up to (and including) $350,000; and

(B)    3 percent of the balance of the financing outstanding at the time of

disbursement of the loan for a loan above $350,000.

SBA Interim Final Rule, *Business Loan Program Temporary Changes; Paycheck*

*Protection Program Second Draw Loans*, 86 Fed. Reg. 3,712, 3,721-3,722 (Jan. 14,

2021) (to be codified at 13 C.F.R. §§ 120-121).

## FACTUAL ALLEGATIONS

### I.    Defendants applied and were approved for PPP loans.

79.    Between December 2019 and February 2020, prior to and completely unrelated

to, the COVID-19 outbreak, PGE permanently laid off nearly 200 employees as they closed the

company's pipeline division.

80.    On or around March 31, 2020, Governor Wolf issued a Stay-at-Home Order due

to the COVID-19 outbreak that applied to Somerset County. Proclamation of Disaster

Emergency, 50 Pa. B. 1644 (Mar. 21, 2020). All Corporate Defendants ceased operations as non-

essential businesses.

81.    After the announcement of the PPP, Ryan asked Relator Kane to calculate the

amount of funds that each of the Corporate Recipient Defendants could receive for the covered

period. Relator Kane completed this calculation for Ryan.

82.    Relator Kane was not involved in the process of completing the Borrower

Application Forms for any of the Corporate Defendants. However, Relator Kane was included in

email communications between and among Ryan, Matt, Younkin, and Michael Carr, Corporate Defendants' contact at Somerset Trust Bank where Corporate Defendants did their banking.

83.     BT's application was signed by Ryan, HVE's application was signed by Matt, and PGE's application was signed by Younkin.

84.     None of the three applications answered "Yes" to indicate that any of the Applicants have common management with other businesses or have owners that own other businesses.

85.     As an employee of BT and later HVE, Relator Kane worked physically in the office located at 458 Hillvale Road in Somerset, as did employees of PGE.

86.     Each of the Corporate Recipient Defendants listed a different physical address, email address, and phone number for the business.

87.     In preparation for disbursement of the loans, Ryan, Matt, and Younkin signed for new bank accounts with the Lender, Somerset Trust Bank, to receive the PPP funds for each of the Corporate Recipient Defendants.

88.     PGE was approved for a loan of $991,800 on or around April 4, 2020. HVE was approved for a loan of $232,300 on or around April 6, 2020. BT was approved for a loan of $1,148,100 on or around April 6, 2020.

89.     As a result of all three loans being funded, Somerset Trust Bank received at least $75,812 in loan processing fees from the SBA.

**II.     Defendants did not use the PPP loans for authorized purposes.**

90.     Within a few days of the approvals of the PGE, HVE and BT loans, Carr, representative of Somerset Trust Bank, arranged for a conference call with the Individual

Defendants and Relator to discuss the disbursement of the PPP loan funds to the newly-created accounts. In reviewing the terms of the loans, Carr emphasized that the Corporate Recipient Defendants were required to hire back, or make offers to hire back, all employees collecting unemployment at the time, even if no contract work could be performed.

91.    In response to Carr's reminder regarding the requirement to rehire employees, Ryan said he did not intend to bring any employees off unemployment until the Corporate Defendants were able to perform contract work again.

92.    One of Kane's responsibilities for Defendants was to review payroll reports for, *inter alia,* individual withholdings and taxes. On or around May 15, 2020, Somerset County's Stay-at-Home order was lifted, allowing for limited in-office operations. Shortly after returning to the office, Kane was advised by Heath, following conversations with Ryan, that he no longer needed to conduct this review. Kane was advised that the time he spent reviewing for errors could be better spent on other tasks and that the risk of errors was not a concern. Kane continued to perform a much higher-level review of payroll until his termination.

93.    Before the PPP funds were received, each Individual Defendant was paid approximately $2,000 per week from one of the three Corporate Recipient Defendants.

94.    After the PPP loan funds were received, Kane saw that each Individual Defendant was now being paid $2,000 per week from each of the three Corporate Recipient Defendants for a total of $6,000 each per week for Matt, Ryan, and Younkin.

95.    When Kane asked Ryan about the increased pay to each of the owners, Ryan responded that the Individual Defendants had more work responsibilities that justified the pay increase.

96.     Two members of the accounting department were not laid off at the time of the Stay-at-Home Order: Kane as controller and the payroll administrator, Amanda Smith. Both Kane and Smith were given raises of $500 per week on or around April 22, 2020.  Kane's raise was paid from BT's payroll, while his regular salary continued to be paid by HVE. Ryan told Kane that his second paycheck would come from BT to avoid the $100,000 threshold per person for payroll costs to be eligible for forgiveness.

97.     Kane and Smith collected these raises until around late May or early June 2020, when the accounts payable clerk, Barb Greer, was re-hired due to the increasing volume of accounting tasks.

98.     Ryan ignored Carr's admonition to rehire Corporate Recipient Defendants' employees. Nevertheless, he secretly paid certain employees "under the table" to work on his personal residence so that they could continue to collect unemployment benefits. Early on, these costs were under the table. Once things were getting "back to normal" Ryan continued to pay the employees working on his personal residence from the PPP bank account along with regular payroll.

99.     Governor Wolf ended the 'Stay-at-Home' order for all of PA on or around June 4, 2020. Amendment to the Proclamation of Disaster Emergency, 50 Pa. B. 2919 (June 13, 2020). On June 5, 2020, Somerset County was moved to the 'Green Phase', meaning businesses were permitted to bring employees into the office up to 75% capacity. Amendment to the Order of the Governor of the Commonwealth of Pennsylvania for the Continued Reopening of the Commonwealth, (June 4, 2020).

100. Around May-June 2020, many but not all employees were brought back to perform contract work. Not all of those brought back by BT and PGE were compensated for their labor from the Defendants' payroll accounts.

101. At Ryan's direct instruction, Smith separately tracked employees' hours in an excel spreadsheet on her computer and compensated their time at a lesser rate than normal using prepaid credit cards. These employees continued to collect unemployment insurance benefits. Smith coded the expense of these prepaid credit cards as fuels costs at Ryan's instruction. Ryan did not pay payroll taxes on the money paid to these employees.

102. At Ryan's instruction, Relator Kane added a monthly expense of $10,000 per month of rent paid from BT to HVF. BT had never paid rent to HVF prior to the receipt of the PPP loan. Kane created false records of rent payments for each month of 2019 from BT to HVF, again at Ryan's direct instruction. These payments were not made at the time and were not paid after the fact. The purpose of the false rent records was to support the supposed rent payments from BT to HVF using PPP loan funds.

| General Ledger Continued... | | | | | | | 08/22/19 |
|---|---|---|---|---|---|---|---|
| Record# | Trans# | Date | Description | Payee/Vendor/Job/Client | Debit | Credit | Balance |
| **5775 Equip Inspections and Licenses** | | | | | | Balance Forward: | |
| 636 | JE 4-2 | 03/31/2018 | QuickBooks Balance Tra | | 194.66 | | 194.66 |
| | | | | Totals: | 194.66 | | 194.66 |
| **6000 Rent** | | | | | | Balance Forward: | |
| 76 | 16094 | 04/06/2018 | Other | Michael Trimpey | | 200.00 | -200.00 |
| | | | | Totals: | | 200.00 | -200.00 |
| **6001 Office Expenses & Supplies** | | | | | | Balance Forward: | |

> 2018 Beeghly Tree General Ledger Rent Account - $200 total credit for the year

| Record# | Invoice# | Due Date | Current +Retained | 1 - 30 | 31 - 60 | 61 - 90 | 91-120+ |
|---|---|---|---|---|---|---|---|
| **2019 Hillvale Farms Accounts Receivable from Beeghly Tree - $120,000 total receivable** | | | | | | | |
| **1 Beeghly Tree, LLC** | | | | | | | |
| **1 Property Lease** | | | | | | | |
| 1 | 1_010119 | 01/31/2019 | | | | | 10,000.00 |
| 3 | 1_030119 | 03/31/2019 | | | | | 10,000.00 |
| 4 | 1_020119 | 02/28/2019 | | | | | 10,000.00 |
| 5 | 1_040119 | 04/30/2019 | | | | | 10,000.00 |
| 6 | 1_050119 | 05/31/2019 | | | | | 10,000.00 |
| 8 | 1_060119 | 06/30/2019 | | | | | 10,000.00 |
| 9 | 1_070119 | 07/31/2019 | | | | | 10,000.00 |
| 11 | 1_080119 | 08/31/2019 | | | | | 10,000.00 |
| 12 | 1_090119 | 09/30/2019 | | | | | 10,000.00 |
| 13 | 1_100119 | 10/31/2019 | | | | 10,000.00 | |
| 15 | 1_120119 | 12/31/2019 | 10,000.00 | | | | |
| 16 | 1_110119 | 11/30/2019 | | | 10,000.00 | | |
| | | **Job Totals:** | 10,000.00 | | 10,000.00 | 10,000.00 | 90,000.00 |
| | | **Client Totals:** | 10,000.00 | | 10,000.00 | 10,000.00 | 90,000.00 |
| | | **Grand Totals:** | 10,000.00 | | 10,000.00 | 10,000.00 | 90,000.00 |

103. Prior to the pandemic, BT had been audited for failure to pay workers compensation payments for the period 2018-2019. The total, which BT had contested, was finalized in or around May 2020. The adjusted total owed by BT was approximately $117,000. Ryan directed this amount to be paid out of the PPP loan bank account and coded the expense as current workers' compensation insurance.

104. Because this cost was incurred before the covered period of the PPP loan, it is not cost that is eligible for forgiveness.

105. Total expenditures of PPP funds that were not allowable use include:

    a. at least $12,000 per week for approximately 8 weeks compensation paid to the Individually Named Defendants;

b. at least $10,000 per month for approximately 2 months paid in fraudulent rent from all or some of the Corporate Recipient Defendants to HVF;

c. approximately $117,000 in fees paid in response to BT's workers compensation audit; and

d. an amount to be determined of payments to former and current employees that was not properly accounted for as payroll, including those costs fraudulently labeled as payments for gas that was paid directly to employees, and those costs paid directly to workers for labor on Ryan's personal residence rather than the normal course of work.

## III.  Defendants applied for and received PPP Second Draw loans.

106.    On or around February 24, 2021, both BT and HVE were approved for PPP Second Draw Loans. BT was approved for $1,137,860. HVE was approved for $177,840. On or around March 16, 2021, PGE was approved for a Second Draw Loan of $1,030,443.

107.    All three Second Draw Loans had a different Lender than the first draw loans. The Second Draw Loan Lender was First Commonwealth Bank.

108.    As a result of processing and funding these Second Draw PPP loans, First Commonwealth Bank received at least $73,0000 in fees.

109.    To receive these Second Draw PPP loans, each entity completed SBA Form 2483-SD, which includes a field for number of employees. For the Second Draw Loan application, BT listed 106, PGE listed 206, and HVE listed 14, totaling 326 employees. The field description reads "Number of Employees (including affiliates, if applicable; may not exceed 300 unless "per location" exception applies)."

110.    Because all three entities are affiliates of one another and the 'per location'
exception does not apply to their industry, all three applications for the Second Draw PPP loans
falsely stated the number of employees.

**IV.    Defendants had knowledge that their actions were fraudulent.**

111.    Both borrower application forms include a certification that the authorized
representative of the Applicant has read and understood the statements included in the forms.
Each also require a good-faith certification that all information included is true and accurate in
all material respects. SBA Form 2483, Borrower Application Form (April 2020), SBA Form
2483-SD, Second Draw Borrower Application Form (March 2021).

112.    On more than one occasion, Kane expressed his concern to the Individual
Defendants about the lack of compliance with proper accounting practices. Specific concerns
that Kane raised were issues of payroll tax being properly paid, incorrectly recording sales taxes
and delivery fees as expenses, and accounting of year-end employee bonuses. Ryan's typical
response was dismissive, and on one occasion he replied to Kane by saying "I don't need to hear
your legal bullshit."

113.    In or around July 2020, Relator Kane was informed that he was being
permanently laid off due to economic reasons, specifically due to the financial impact of
COVID-19.

114.    Kane did not receive, and was not offered, any severance by any of the
Defendants. He also did not receive a paycheck for his last week of work. Kane's last direct
contact with Ryan, on or around July 22, 2020, was a reminder that Kane was still owed a week's
pay.

115.    Kane believes that the Corporate Recipient Defendants have already requested or intend to request forgiveness for their First Draw and Second Draw PPP loans.

## COUNT I
### Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Submitting False Claims for Payment
### (As to Corporate Recipient Defendants and Individual Defendants)

116.    Relator Kane realleges and incorporates all the allegations set forth in the foregoing paragraphs as though fully alleged herein.

117.    The False Claims Act imposes liability on any person who knowingly presents or causes to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

118.    Defendants Beeghly Tree, Hillvale Enterprises, and ProGro Environmental through Matt, Ryan, and Younkin knowingly presented or caused to be presented to the Small Business Administration a claim for approval of Second Draw PPP loans for which they were ineligible.

119.    Defendants Beeghly Tree, Hillvale Enterprises, and ProGro Environmental through Matt, Ryan, and Younkin knowingly made or caused to be made false certifications on their PPP loan application that were material to the government's decision to award them PPP loans intended for small businesses in an amount totaling $2,346,143.

120.    When submitting the application, an applicant company must certify that it is eligible and that all information included in the application form is true and accurate in all material respects.

121.    But for Defendants' submission of their false claims, the SBA would not have approved the loans.

122.     But for Defendants' submission of their false claims, the SBA would not have paid the Lender the processing fee of the loan applications in an amount of at least $73,941.

123.     The United States of America has been damaged by the aforementioned misrepresentations in a total dollar amount of at least $2.4 million.

124.     Accordingly, the United States government is entitled to treble damages under the False Claims Act in an amount to be determined at trial, plus a civil penalty for each false claim presented or caused to be presented by Defendant.

**COUNT II**
**Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Creating a False Record or Statement Material to a False Claim**
**(As to Corporate Recipient Defendants and Individual Defendants)**

125.     Relator Kane realleges and incorporates all the allegations set forth in the foregoing paragraphs as though fully alleged herein.

126.     The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim submitted to get a false or fraudulent claim paid or approved by the United States government. 31 U.S.C. § 3729(a)(1)(B).

127.     Defendants knowingly made or caused to be made false records or statements to support false claims submitted to the Government.

128.     Defendants knowingly made or caused to made false certifications on their PPP loan applications for both the First and Second Draw loans as well as their application for forgiveness of PPP loans.

129.    As set forth more fully above, Defendant Ryan Beeghly instructed employees of the Corporate Defendants to falsely record work hours, to create false records of rent payments, and to create other false or fraudulent records including the loan applications themselves.

130.    The false records Defendants made were used to support false claims Defendants submitted to the United States government via the Lender.

131.    Because of the false claims supported by false records, the United States granted Corporate Recipient Defendants both First Draw and Second Draw PPP Loans, forgave the Corporate Recipient Defendants' obligation to repay the First Draw PPP Loans, and paid the Lenders processing fees for both rounds of PPP Loans.

132.    The United States of America has been damaged by the aforementioned misrepresentations in a dollar amount of at least $4.8 million.

133.    Accordingly, the United States government is entitled to treble damages under the False Claims Act, in an amount to be determined at trial, plus a civil penalty as deemed appropriate.

### COUNT III
### Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(C)
### Conspiracy to Violate the False Claims Act
### (As to All Defendants)

134.    Relator Kane realleges and incorporates all the allegations set forth in the foregoing paragraphs as though fully alleged herein.

135.    The False Claims Act imposes liability on any person who conspires to commit a violation of the False Claims Act. 31 U.S.C. § 3729(a)(1)(C).

136.    All defendants conspired to violate the False Claims Act.

137.    As set forth more fully above, the Individual Defendants each signed and certified at least one application on behalf of the Corporate Recipient Defendants, and all Corporate Defendants and Individual Defendants conspired to create false records supporting the misuse of government funds.

138.    The United States of America has been damaged by the aforementioned misrepresentation in a dollar amount of at least $4.86 million.

139.    Accordingly, the United States government is entitled to treble damages under the False Claims Act, in an amount to be determined at trial, plus a civil penalty as deemed appropriate.

## COUNT IV
### Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G)
### Avoiding or Decreasing Obligation
### (As to All Defendants)

140.    Relator Kane realleges and incorporates all the allegations set forth in the foregoing paragraphs as though fully alleged herein.

141.    The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1)(G)

142.    Defendants made or caused to made false statements and records to decrease the Corporate Recipients' obligation to pay money to the government.

143.    As set forth more fully above, Defendants made false records to conceal or knowingly concealed the Corporate Recipient Defendants' unauthorized uses of the PPP loan funds.

144.    But for Defendants' concealment, the SBA would not have forgiven the Corporate Recipient Defendants' obligation to repay the PPP loans including interest, would not have granted Second Draw PPP loans to Corporate Recipient Defendants, and would not have paid processing fees to the Lender for the Second Draw PPP Loans.

145.    The United States of America has been damaged by the aforementioned misrepresentations in a dollar amount of at least $4.79 million.

146.    Accordingly, the United States government is entitled to treble damages under the False Claims Act, in an amount to be determined at trial, plus a civil monetary penalty as deemed appropriate.

## COUNT V
### Violations of the False Claims Act, 31 U.S.C. § 3730(h)
### Retaliation
### (As to Beeghly Tree, Hillvale Enterprises, and Ryan Beeghly)

147.    Relator Kane realleges and incorporates all the allegations set forth in the foregoing paragraphs as though fully alleged herein.

148.    The False Claims Act entitles to relief any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter. 31 U.S.C. § 3730(h)

149.    Relator Kane timely brings this action within 3 years of the retaliatory actions as required by 31 U.S.C. § 3730(h)(3).

150.    As set forth more fully above, Defendant Ryan Beeghly discharged Relator Kane from his employment with Hillvale Enterprises and ceased payments to Relator Kane from Beeghly Tree because of Relator's efforts to correct Defendants' actions to comply with relevant statutes and guidance related to applications for and use of PPP loan funds.

151.    Relator Kane has been damaged by the aforementioned actions in a dollar amount to be determined at trial.

152.    Accordingly, Relator Kane is entitled to all relief made available to him under 31 U.S.C. § 3730(h)(2).

## PRAYER FOR RELIEF

WHEREFORE, Relator, acting on behalf of and in the name of the United States of America and on his own behalf, prays that judgment will be entered against Defendants for violations of the Federal False Claims Act, 31 U.S.C. § 3729, *et seq.* as follows:

a)    In favor of the United States against Defendants for treble the amount of damages to the Government from the submission of false claims, plus the maximum civil penalties for each violation of the Federal False Claims Act;

b)    In favor of Relator Kane for the maximum amount pursuant to 31 U.S.C. § 3730(d) False Claims Act provision to include reasonable expenses, attorney's fees, and costs incurred by Relator Kane;

c)    In favor of Relator Kane for the maximum amount pursuant to 31 U.S.C. § 3730(h) False Claims Act provision to include double the amount of back pay,

            interest back pay, and reasonable expenses and attorneys' fees incurred by Relator

            Kane;

d)     That, in the event the United States Government elects to intervene in and proceed

            with this action, Relator be awarded between 15% and 25% of the proceeds of the

            action or of any settlement in accord with 31 U.S.C. § 3730(d)(1);

e)     That, in the event that the United States Government does not proceed with this

            action, Relator be awarded between 25% and 30% of the proceeds of the action or

            of any settlement in accord with 31 U.S.C. § 3730(d)(2);

f)     That, pursuant to 31 U.S.C. § 3730(c)(5), Relator be awarded a share of any

            alternate remedy that the United States Government elects to pursue;

g)     For all costs of the civil action;

h)     That permanent injunctive relief be granted to prevent any recurrence of the False

            Claims Act conduct described above for which redress is sought in this

            Complaint;

i)     That the United States and the Relator be awarded prejudgment and post

            judgment interest;

j)     In favor of Relator Kane and the United States for further relief as this Court

            deems to be just and equitable; and,

k)     Such other relief as this Court deems appropriate.

## JURY DEMAND

    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator Kane hereby demands a jury trial.

CONFIDENTIAL AND UNDER SEAL—*QUI TAM* COMPLAINT
*United States ex rel. Kane v. Beeghly Tree, et al.*

September 12, 2021                    Respectfully Submitted,

_____
Andrew M. Stone (Bar No.: PA 35176)
STONE LAW FIRM, LLC
437 Grant Street, Suite1806
Pittsburgh, Pa. 15219
Tele:  412-391-2005
astone@stone-law-firm.com


R. Scott Oswald, Esq. (to be admitted *pro hac vice*)
Janel Quinn, Esq. (to be admitted *pro hac vice*)
The Employment Law Group, P.C.
1717 K St, NW, Suite 1110
Washington, D.C. 20006
(202) 261-2813
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
jquinn@employmentlawgroup.com

Attorneys for *Qui Tam* Relator