IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL., MIKE KANE, <br><br> Plaintiffs, <br><br> v. <br><br> BEEGHLY TREE, LLC, HILLVALE ENTERPRISES, LLC, PROGRO ENVIRONMENTAL LLC, HILLVALE FARMS, RYAN BEEGHLY, MATT BEEGHLY, and HEATH YOUNKIN, <br><br> Defendants. | 3:21-CV-00160-CCW |

## OPINION

Before the Court is Plaintiff-Relator Mike Kane's Motion for an Award of Attorneys' Fees and Expenses, ECF No. 36. For the reasons set forth below, the Motion will be GRANTED IN PART.

**I.   Background**

This case was initially assigned to the Honorable Kim R. Gibson before it was reassigned to the undersigned on July 1, 2025. ECF No. 54. The relevant factual and procedural background is as follows.

On September 13, 2021, Mr. Kane filed a sealed *qui tam* Complaint in this Court alleging that Defendants Beeghly Tree, LLC, Hillvale Enterprises, LLC, ProGro Environmental, LLC, Hillvale Farms, Ryan Beeghly, Matt Beeghly, and Heath Younkin violated various provisions of the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ECF No. 2. Mr. Kane had previously served as the Controller of Defendants Beeghly Tree and Hillvale Enterprises until he was laid off in July 2020. *Id.* ¶¶ 11–13. In sum, Mr. Kane alleged that the Defendants violated the False

Claims Act by making false certifications in applications for Paycheck Protection Program ("PPP") loans, using PPP loans for improper purposes, and falsifying records to decrease their obligations to repay PPP loans. *See generally* ECF No. 2. He also alleged that Defendants Beeghly Tree, Hillvale Enterprises, and Ryan Beeghly violated the False Claims Act by retaliating against him for his "efforts to correct Defendants' actions to comply with relevant statutes and guidance related to applications for and use of PPP loan funds." *Id.* ¶ 150.

After investigating Mr. Kane's claims, the United States filed a Notice of Intervention on May 28, 2024, informing that Court of its decision to intervene in this case for the purpose of effectuating a settlement with Defendants. ECF No. 20. Specifically, the United States intervened on Counts I through IV of Mr. Kane's Complaint. *Id.* On August 27, 2024, the United States filed a Motion for Voluntary Dismissal of Counts I through IV after finalizing a settlement agreement with Defendants that resolved those Counts. ECF No. 32. The United States' settlement agreement did not, however, resolve the issue of Mr. Kane's entitlement to attorneys' fees and costs under 31 U.S.C. § 3730(d)(1), or Mr. Kane's retaliation claim alleged in Count V of the Complaint. *Id.* On August 28, 2024, the Court granted the United States' Motion and dismissed Counts I through IV with prejudice. ECF No. 33. And on February 26, 2025, the Court dismissed Count V after Mr. Kane and the Defendants separately settled his retaliation claim. ECF Nos. 52, 53.

Meanwhile, Mr. Kane filed the instant Motion for an Award of Attorneys' Fees and Expenses, seeking an award of attorneys' fees and costs in connection with the Defendants' settlement with the United States. ECF No. 36. The Motion was fully briefed while this case was pending before Judge Gibson. ECF Nos. 37, 42, 44, 49. After the case was reassigned to the undersigned, the Court reviewed the briefing and other materials submitted regarding the instant

Motion and ordered the parties to provide supplemental evidence of the prevailing market rate in Pittsburgh for legal services similar to those provided by Mr. Kane's counsel in this case. ECF No. 55. The parties timely did so on September 11, 2025. ECF Nos. 56, 57. The Motion is thus ripe for resolution.

**II.   Legal Standard**

Mr. Kane's request for attorneys' fees and costs arises from 31 U.S.C. § 3730(d)(1). ECF No. 37. That statute applies when the government intervenes in a False Claims Act suit "result[ing] in a settlement in which the defendant agrees to pay money." *Simring v. Rutgers*, 634 F. App'x 853, 857 (3d Cir. 2015). When it applies, § 3730(d)(1) entitles a relator to "reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(1).

Where, as here, the moving party seeks an award of attorneys' fees under a fee-shifting statute, the calculation of the appropriate fee is determined using the lodestar method.[1] *Clemens v. New York Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 399 (3d Cir. 2018); *Wintjen v. Denny's, Inc.*, No. 2:19-CV-00069-CCW, 2025 WL 1009003, at *2 (W.D. Pa. Apr. 4, 2025) (Wiegand, J.); *Simring*, 634 F. App'x at 857 (applying the lodestar method to a fee application under § 3730(d)(1)). Under that method, first, the district court must calculate the fee applicant's lodestar—"the number of hours worked multiplied by the prevailing hourly rate"—before applying the twelve factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 128 (3d Cir. 2017).

**III.   Analysis**

Mr. Kane seeks an award of attorneys' fees for work performed by two law firms: Stone Law Firm, LLC, and The Employment Law Group, PC (collectively, "Relator's Counsel").

---

[1] The parties agree that the lodestar method applies here. *See* ECF No. 37 at 6; ECF No. 42 at 13.

3

Relator's Counsel's combined lodestar is $116,487.50. ECF No. 36-1. Additionally, Relator's Counsel incurred costs of $1,866.75 in litigating this case. ECF No. 36-2. Accordingly, Mr. Kane seeks an award of fees and costs covering these amounts pursuant to 31 U.S.C. § 3730(d)(1). ECF No. 37. The Defendants object to Mr. Kane's request on several grounds. Specifically, they argue that the results obtained by Mr. Kane in this case do not justify the size of the fee award he seeks, the time billed by Relator's Counsel on this matter was excessive and unreasonable, and the hourly rates requested by Relator's Counsel are unreasonable for the Pittsburgh market. ECF No. 42. The Court will first address Defendants' objection to Relator's Counsel's requested rates and then turn to the Relator's Counsel's billing entries before addressing the whether the requested fee is justified considering the results obtained.

### A.     Hourly Rates

Relator's Counsel has requested to be paid the following hourly rates:

| **Professional** | **Organization** | **Requested Hourly Rate** |
|---|---|---|
| Scott Oswald | The Employment Law Group | $850 |
| Andrew Stone | Stone Law Firm | $825 |
| Nick Woodfield | The Employment Law Group | $750 |
| Janel Quinn | The Employment Law Group | $650 |
| Lydia Pappas | The Employment Law Group | $450 |
| Rosamond Kopzynski | The Employment Law Group | $250 |
| Anthony Primelo | The Employment Law Group | $250 |
| Cole Wilson | The Employment Law Group | $250 |
| Phil Becnel[2] | Dinolt, Becnel & Wells | $250 |

---

[2] Mr. Becnel "is an investigator directly retained by The Employment Law Group, P.C." ECF No. 36-3 ¶ 16.

| Ellenor Whitfield | The Employment Law Group | $250 |

To determine an attorney's reasonable hourly rate, a court must assess "the experience and skill of the . . . attorney[] and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *White v. Beaver Cnty.*, No. 2:17-cv-00998, 2020 WL 3866896, at *3 (W.D. Pa. July 9, 2020) (Hornak, C.J.) (citing *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)). The relevant "community" for purposes of determining a reasonable hourly rate is the forum of the litigation, unless (1) "the need for the special expertise of counsel from a distant district is shown[,]" or (2) "local counsel are unwilling to handle the case." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005) (cleaned up). In determining a reasonable rate, a district court "may not set attorney's fees based on a generalized sense of what is usual and proper but must rely upon the record." *White*, 2020 WL 3866896, at *3 (citing *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d Cir. 2001)). Accordingly, the plaintiff bears the burden of "producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." *Id.* "This burden is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience." *Stadler v. Abrams*, No. CV 13-2741, 2018 WL 3617967, at *2 (D.N.J. July 30, 2018), *aff'd*, 785 F. App'x 66 (3d Cir. 2019); *see also Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583, 595 (3d Cir. 2000) ("An attorney's showing of reasonableness must rest on evidence other than the attorney's own affidavits."). The party opposing the fee request "has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Once an adverse party raises an

objection, the court "has a great deal of discretion to adjust the fee award in light of those objections." *Id.*

Mr. Kane argues that Relator's Counsel's requested rates are reasonable. ECF No. 37 at 9–13. Mr. Kane initially supported the reasonableness of Relator's Counsel's requested rates with the Declarations of Nicholas Woodfield, Andrew M. Stone, and Frederick M. Morgan, Jr. ECF Nos. 36-3–36-5. Mr. Stone serves as Relator's local counsel in this case, and avers that in light of his extensive experience litigating False Claims Act cases and over 40-years' experience practicing in this District, his requested rate of $825/hour "is reasonable and in line with rates charged by attorneys with similar knowledge, skill, and experience." ECF No. 36-4 ¶ 10. After the Court ordered the parties to submit additional evidence of a reasonable market rate in Pittsburgh, Mr. Kane submitted two additional declarations from attorneys Arthur H. Stroyd, Jr. and Darth M. Newman. ECF Nos. 56-1, 56-2. Mr. Stroyd has many decades of experience practicing law in Pittsburgh, and "spent much of [his] career with the international law firm, Reed Smith LLP, where [he] was one of its Managing Partners also serving as Head of its Litigation Group." ECF No. 56-1 ¶ 2. In Mr. Stroyd's opinion, the rates requested by Relator's Counsel are "consistent with those charged by other attorneys in the Western District of Pennsylvania with comparable skill and experience and are in line with rates charged by attorneys of similar experience, skill and reputation focusing their practice in *qui tam* litigation in the Western District of Pennsylvania and nationwide." *Id.* ¶¶ 7–8. Mr. Newman has sixteen years of experience practicing law, ten of which have been in Pittsburgh. ECF No. 56-2 ¶¶ 6, 8. Mr. Newman's practice has primarily consisted of "represent[ing] clients in complex litigation matters," including "plaintiffs bringing complex and risky False Claims Act and related" claims. *Id.* ¶¶ 8, 18. Mr. Newman's hourly rate in cases

6

like this one is $948. *Id.* ¶ 16. As with Mr. Stroyd, Mr. Newman avers that the hourly rates requested by Relator's Counsel are reasonable for the Pittsburgh market. *Id.* ¶¶ 21–22.

Defendants object to the reasonableness of Relator's Counsel's requested hourly rates as "several hundred dollars per hour more than what is normal in the community[.]" ECF No. 42 at 19. To support this assertion, Defendants rely on the Declaration of Gary P. Hunt, Esq., a Pittsburgh-based attorney with 48-years' experience. ECF No. 42-4 ¶ 2. Mr. Hunt is a shareholder at the law firm Tucker Arensberg, P.C., where his practice consists primarily of complex litigation. *Id.* ¶¶ 2–3. While Mr. Hunt recognizes that Andrew M. Stone, is "an excellent lawyer," Mr. Hunt believes that the hourly rates requested by Relators' Counsel are "far out of line with the Pittsburgh market."[3] *Id.* ¶ 25(b)(v). Mr. Hunt concludes that in his opinion, "a reasonable hourly rate [in Pittsburgh] for the risk-based prosecution of the *qui tam* claim is in the range of $400/hour to $500/hour with the rates for less experienced attorneys and paralegals to be adjusted proportionately." *Id.* ¶ 26.

The Court recognizes that the declarations submitted by all parties are from respected practitioners who are familiar with the Pittsburgh legal market. But on balance, the Court finds the declarations submitted by Mr. Kane to be more persuasive. First, Mr. Kane has provided two declarations from respected Pittsburgh attorneys (other than his own counsel) compared to just one such declaration from the Defendants. And one of the declarations offered by Mr. Kane is from an attorney who represents clients in False Claims Act cases and who charges an hourly rate higher than that requested by any of Relator's Counsel. Furthermore, the Court agrees that *qui tam*

---

[3] Mr. Hunt makes this assertion with respect to attorney Andrew M. Stone. ECF No. 42-4 ¶ 25(b)(v). But because Mr. Hunt also asserts that the Washington D.C. based attorneys at The Employment Law Group request rates that are excessive for the Washington D.C. market, the Court can infer that Mr. Hunt believes those rates are also not reasonable for the Pittsburgh market given that Mr. Hunt asserts that charging D.C. rates in Pittsburgh is inappropriate. *Id.* ¶¶ 25(b)(i), (b)(vi).

litigation is highly complex and requires significant specialization, warranting higher rates. *See* ECF No. 56-1 ¶ 6. Accordingly, the Court will approve Relator's Counsel's requested rates.

**B.    Excessive Billing Entries**

To conduct the second half of the lodestar calculation the Court must determine whether the hours billed by Relator's Counsel are reasonable. "[I]n calculating the hours reasonably expended [by a fee applicant], the District Court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) (cleaned up). Here, Defendants "object to the petition as a whole, and in particular to the number of hours . . . charged." ECF No. 42 at 9–12. In response, Relator argues that it is improper for Defendants to broadly object to all of Relator's Counsel's billing entries as excessive and unreasonable rather than making pointed objections to specific time entries. *See* ECF No. 44 at 1–2.

As a threshold matter, the Court agrees with Relator that a blanket objection to Relator's Counsel's time entries as excessive and unreasonable is improper. The Court may only reduce a fee award when "an opposing party lodges a *sufficiently specific* objection[.]" *Interfaith Cmty.*, 426 F.3d at 713 (emphasis added). A generic objection to a fee application as "excessive" and/or "unreasonabl[e]" is only proper "when [the requested fee] is 'simply absurd,'" not if it "is just 'grossly excessive.'" *Horizon House, Inc. v. E. Norriton Twp.*, No. CV 19-1252, 2023 WL 1765912, at *4 (E.D. Pa. Feb. 3, 2023) (quoting *Young v. Smith*, 905 F.3d 229, 235 (3d Cir. 2018)). Accordingly, "[t]he court will instead scrutinize each of [Relator's Counsel's] billing entries subject to the [Defendants'] specific objections to determine if each is reasonable." *Horizon House*, 2023 WL 1765912, at *4.

8

The Court now turns to Defendants' specific objections. In particular, Defendants object to the amount of time Relators' Counsel spent on: (1) a wellness check for Relator; (2) administrative tasks "such as emailing or calling other attorneys to calendar dates for meetings;" (3) the same task by multiple attorneys (*i.e.*, "phone calls or meetings when two or more billers were present"); (4) drafting the Complaint; and (5) drafting the instant fee application. ECF No. 42 at 9–12. Defendants also argue that any time spent pursuing Relator's retaliation claim should not be compensable because that claim "was settled separately and therefore no fees related to that claim should be included[.]" *Id.* at 5 n.4. Finally, Defendants cite several specific time entries as examples of excessive and/or unreasonable time.[4] *Id.* at 12.

The Court has reviewed the challenged time entries, and generally finds them reasonable. There is nothing inherently unreasonable, for example, about billing for weekly meetings to discuss a case, or billing for time spent preparing for a relator's interview with the government and then having three attorneys attend that meeting. Furthermore, the length of time spent on such tasks by Relator's Counsel is not excessive. For example, Relator's Counsel collectively billed just 7.2 hours preparing for Relator's interview with the United States. ECF No. 36-1 at 14 (lines 280–86, 288–89). That does not strike the Court as excessive for a False Claims Act case in which a relator's government interview plays a central role.

However, the Court will exclude some of the challenged time entries. First, the Court agrees with Defendants that time billed on Mr. Kane's individual employment and retaliation claims is not compensable because those claims were settled privately between Mr. Kane and the Defendants, separately from the claims which Defendants settled with the government. *See* ECF

---

[4] For example, Defendants object to time spent for an aborted client call, ECF No. 36-1, line 376, time billed preparing for and conducting "mock interview[s,]" ECF No. 36-1, lines 280–89, and time billed for having three attorneys attend Relator's interview with the United States, ECF No. 36-1, lines 290 and 293–94. ECF No. 42 at 12.

9

No. 37 at 1 ("Kane subsequently separately resolved his employment and retaliation claims with Beeghly Tree in a private settlement agreement"). Mr. Kane does not substantively respond to Defendants' argument that such time should be excluded. ECF No. 44. The Court notes that Mr. Kane's right to attorneys' fees based on his retaliation claim would arise, if at all, under 31 U.S.C. § 3730(h)(2), which he does not cite in his Motion or supporting Brief. *See generally* ECF Nos. 36, 37. Rather, as Mr. Kane makes clear, "the only issue to be resolved at this juncture is Kane's award of reasonable attorneys' fees and expenses aris[ing] from 31 U.S.C. § 3730(d)(1)." ECF No. 37 at 1. Thus, the Court will exclude time billed on Mr. Kane's employment and retaliation claims. Based on the Court's review of Relator's Counsel's billing entries, $4,517.50 of Relator's Counsel's lodestar consists of time spent on such claims.[5] Relator's Counsel's lodestar will be reduced accordingly.

The Court will also exclude some of the specific time entries that Defendants object to. In particular, the 0.5 hours billed by Anthony Primelo to set up Microsoft Teams, ECF No. 36-1 at 14 (line 287), is not something that would ordinarily be billed to a client. Accordingly, the Court will exclude it. Additionally, the Court will exclude the 0.8 hours billed by Relator's Counsel for time spent waiting on hold for a call with Relator which apparently did not occur, ECF No. 36-1 (lines 375, 376, and 378), as that time did not meaningfully contribute to Relator's Counsel's litigation of this case. For the same reason, the Court will exclude 0.4 hours billed for conducting a wellness check on Relator. *See* ECF No. 36-1 (lines 174, 175, 179, 180). Excluding all these time entries, Relator's Counsel's lodestar will be further reduced by $900.

After making the aforementioned reductions, the Court calculates Relator's Counsel's lodestar as $111,070.

---

[5] *See* ECF No. 36-1 (lines 72, 81, 448, 451, 456, 459, 528, 530, 531, 532, 533, 642, 656, 657, 658, 675, and 677).

10

### C. Lodestar Adjustment

Having calculated the lodestar amount, the Court may consider whether adjust it up or down based on a variety of factors.[6] *See Huber v. Simon's Agency, Inc.*, No. CV 19-1424, 2025 WL 1710045, at *7 (E.D. Pa. June 18, 2025) (citing *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995)). "[T]he most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Indeed, "[w]hen a defendant requests a downward adjustment based on plaintiff's limited success, a court must 'make clear that it has considered the relationship between the amount of fee awarded and the results obtained.'" *Huber*, 2025 WL 1710045, at *7 (quoting *Hensley*, 461 U.S. at 437). The Court may not, however, "adjust the lodestar to reflect a certain ratio between the fees and damages awarded." *Robinson v. Fetterman*, 387 F. Supp. 2d 432, 438 (E.D. Pa. 2005) (citing *Washington v. Phila. Cnty. Court of Common Pleas*, 89 F.3d 1031, 1042–43 (3d Cir.1996)).

Here, Defendants argue that the court should adjust Relator's Counsel's lodestar downward in light of Mr. Kane's limited success. ECF No. 42 at 14–17. Specifically, Defendants contend that Mr. Kane "had minimal success" because "[i]n the end, nearly all of [his] claims failed under the most basic scrutiny[.]" *Id.* at 16–17. But that is not the case. As Mr. Kane notes in his Reply, Defendants "sought and secured a global settlement" with the United States, and if "Defendants believed any [of Mr. Kane's] claims lacked merit, they were free to litigate them." ECF No. 44 at 4. Indeed, while it appears that the United States did concede during settlement discussions that certain of Defendants' potential defenses may have had some merit, it "reserve[d] the right to

---

[6] Those factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Windall*, 51 F.3d at 1185 (citing *Johnson*, 488 F.2d at 717–19).

11

intervene on any or all of the claims pled in Relator's *qui tam* Complaint," ECF No. 42-2 n.2, and ultimately intervened on Counts I through IV for purposes of settling those claims with the Defendants, ECF Nos. 20, 21. Defendants cannot argue that Relator's Counsel's fee should be reduced because Mr. Kane's claims lacked merit after Defendants agreed to settle those claims. *See Customs Fraud Investigations, LLC v. Victaulic Co.*, No. CV 13-2983, 2019 WL 4280494, at *5–6 (E.D. Pa. Sept. 9, 2019) (rejecting argument that fees should be reduced because settled claims were "clearly frivolous"); *U.S. ex rel. Fallon v. Accudyne Corp.*, 97 F.3d 937, 938–39 (7th Cir. 1996) (similar). Furthermore, Defendants' contention that the fee award is excessive because it is approximately 60% of the total settlement amount is unpersuasive. In False Claims Act cases, it is not uncommon for a fee award to *exceed* the amount of a settlement. *See, e.g.*, *United States ex rel. Bahnsen v. Bos. Sci. Neuromodulation Corp.*, No. CV 11-1210, 2021 WL 118927, at *5 (D.N.J. Jan. 11, 2021) (approving fee award of $4.6 million in a case that settled for $2.5 million); *Victaulic*, 2019 WL 4280494, at *10 (approving fee award of $1.1 million in a case that settled for $600,000). And while Defendants insist that the $200,000 they paid to the United States to settle Counts I through IV is *de minimis* compared to what Mr. Kane initially sought, the Court does not find that the settlement is nominal. *See Victaulic*, 2019 WL 4280494, at *5 (finding $600,000 settlement was "substantial" even where relator initially sought almost $1.8 billion in damages).

Taking all the facts and circumstances of this case into account, and comparing the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation[,]" *Hensley*, 461 U.S. at 435, the Court declines to adjust Relator's Counsel's lodestar downwards.

Accordingly, the Court will award Mr. Kane $111,070 in attorneys' fees.

**D.     Costs**

In addition to attorneys' fees, Mr. Kane seeks an award of costs in the amount of $1,866.75. Reasonable costs are compensable under the False Claims Act. 31 U.S.C. § 3730(d)(1). Defendants object to this amount on the grounds that it includes costs "for what appears to be a credit report on Relator, generic 'online legal research,' and 'database searches,' and $823.10 for bates labeling documents (which can be done for free through any .pdf program)." ECF No. 42 at 11. Mr. Kane does not substantively respond to Defendants' objections. ECF No. 44. The Court has reviewed the challenged costs submissions, and will exclude the $823.10 that Mr. Kane seeks for producing bates-stamped documents. As Defendants point out, bates-stamping documents is something that can typically be done for free using widely available tools, and Mr. Kane's description of this expense is not sufficiently specific to explain why it cost almost a thousand dollars to do so. *See* ECF No. 36-2 (line 11). The Court finds the other expenses for which Mr. Kane seeks reimbursement to be reasonable. Accordingly, the Court will award Mr. Kane $1,043.65 in costs.

**IV.    Conclusion**

For the foregoing reasons, Mr. Kane's Motion for an Award of Attorneys' Fees and Expenses, ECF No. 36, will be GRANTED IN PART, as follows:

1. Mr. Kane will be awarded $111,070 in attorneys' fees.
2. Mr. Kane will be awarded $1,043.65 in costs.

DATED this 26th day of September, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record